UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., as Broadcast Licensee of the August 6, 2011 Ultimate Fighting Championship 133: Rashad Evans v. Tito Ortiz Event, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-2820-B |
| THIRSTY CAMEL, INC., d/b/a as Thirsty Camel d/b/a Thirsty Camel Club, AND DANIEL HERNANDEZ, d/b/a as Thirsty Camel d/b/a Thirsty Camel Club | § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Productions, Inc.'s Motion for Default Judgment (Doc. 10), filed May 5, 2015. For the reasons that follow, the Court concludes that Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.

BACKGROUND

This is a case about alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (the FCA). Plaintiff Joe Hand Productions, Inc.'s (Joe Hand) is in the business of marketing and licensing closed-circuit, pay-per-view prizefighting events to commercial establishments. Doc. 10-1, Pl.'s Ex. A, Aff. of Thomas P. Riley (Riley Aff.) ¶ 4, App. 5. As part of this business, Joe Hand acquired the proprietary rights to exhibit and sublicense the

Broadcast the August 6, 2011 Ultimate Fighting Championship 133: Rashad Evans v. Tito Ortiz Event, including the undercard and preliminary bouts (the Event). Doc. 1, Pl.'s Original Compl. ¶ 6. It then marketed and distributed exhibition rights to the Event to commercial locations throughout Texas in exchange for a fee. *Id.* at ¶ 8. To prevent unlicensed establishments from exhibiting the Event without a license, the transmission was electronically coded or "scrambled." *Id.* at ¶ 9. Establishments that had bought the broadcast rights were provided with electronic decoding equipment to unscramble the signal. *Id.* at ¶ 11. Thirsty Camel, Inc. and Daniel Hernandez (Thirsty Camel) did not obtain a license, but nevertheless broadcast the Event to the patrons of his establishment, the Thirsty Camel Club, on August 6, 2011, according to Joe Hand. *Id.* at ¶¶ 12–16.

On August 6, 2014, Joe Hand filed this case against Thirsty Camel, alleging it willfully violated the FCA for commercial gain. *Id.* at ¶¶ 12–18. It asks for statutory and additional damages under the FCA; a permanent injunction preventing Thirsty Camel from intercepting or exhibiting future Joe Hand programs without a license; court costs; attorney's fees; and pre and post-judgment interest. *Id.* at 5–6.

Joe Hand served Daniel Hernandez, individually, and d/b/a Thirsty Camel and d/b/a Thirsty Camel Club, with its Complaint on January 31, 2015. Doc. 4, Summons Issued as to Daniel Hernandez, Thirsty Camel, Inc.[hereinafter Summons] 2. Nothing in the record indicates Thirsty Camel (Hernandez) ever responded. Accordingly, Joe Hand requested the court clerk make an entry of default on May 5, 2015. Doc. 9, Request for Clerk to Enter Default. That same day, it moved the Court for a default judgment. Doc. 10, Mot. for Default J. The next day, the court clerk issued an entry of default. Doc. 11, Clerk's Entry of Default. Now the Court considers Joe Hand's Motion for

Default Judgment. Doc. 10, Mot. for Default J. To date, Thirsty Camel has not made an appearance in this case.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The relevant factors include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing this, courts should assume, that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* But "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally, courts should not award damages without a hearing, unless detailed affidavits establish the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if it can determine the amount of damages with mathematical calculation, by referencing the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### III.

### ANALYSIS

Applying this three-part analysis, the Court ultimately concludes that a default judgment here is (1) procedurally warranted; (2) supported by a sufficient factual basis in Joe Hand's Complaint; (3) and that, because the Court can determine the amount of damages with mathematical calculation by referencing information in the pleadings and supporting documents, a hearing is unnecessary. *See James*, 6 F.3d at 310. Thus, Joe Hand is entitled to a default judgment against Thirsty Camel for his alleged FCA violations in the amount of $7,000 in

statutory violations plus $1,000 in attorney's fees.

A.     *Whether An Entry of Default Judgment Is Procedurally Warranted*

After applying the six *Lindsey* factors to Joe Hand's Motion, the Court determines that default judgment is procedurally warranted. First, Thirsty Camel has not filed any responsive pleadings, so there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Thirsty Camel's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, given that Thirsty Camel has had over a year to either file an answer to Joe Hand's Complaint, or else explain why it has not done so, the grounds for default are clearly established. *Cf. Elite v. The KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Thirsty Camel's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Joe Hand seeks only the relief the law provides it, and Thirsty Camel has no applicable defense to its claims, at least as far as this Court can see, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default, if it were challenged by Thirsty Camel.

B.      *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, the Thirsty Camel is deemed to have admitted the allegations

set forth in the Joe Hand's Complaint. Nonetheless, the Court must review the pleadings to

determine whether they present a sufficient basis for Joe Hand's claim for relief. *Nishimatsu Constr.*,

515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for

guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim
> showing that the pleader is entitled to relief." The purpose of this requirement is "to
> 'give the defendant fair notice of what the . . . claim is and the grounds upon which
> it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*
> *Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only
> "be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*
> (footnote and citations omitted). "[D]etailed factual allegations" are not required,
> but the pleading must present "more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

Joe Hand alleges Thirsty Camel "willfully intercepted and/or received the interstate

communication of the Event," or, alternatively, "assisted in the receipt of the interstate

communication of the Event." Doc. 1, Pl.'s Original Compl. ¶ 12. Then, according to Joe Hand,

Thirsty Camel "transmitted, divulged and published [the Event] . . . to patrons within [his

establishment] . . . willfully and with the express purpose and intent to secure a commercial

advantage and private financial gain. *Id.* at ¶¶ 12–13. This not only "infringed upon [Joe Hand's]

exclusive rights" to broadcast the Event, *id.* at ¶ 13, but also violated 47 U.S.C. §§ 553 and 605, *id.*

at ¶ 17–18, according to Joe Hand.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . or

receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a)(6). A person violates 47 U.S.C. § 553 when he "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). And when a person intercepts satellite or cable transmissions without authorization, he violates both sections. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002). Here, Joe Hand alleges the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal, and that Thirsty Camel intercepted it without authorization and exhibited it to patrons of his establishment for his own commercial benefit. Doc. 1, Compl. ¶¶ 9–16. After reviewing the Complaint, the Court concludes that Joe Hand's allegations state a viable claim for relief and are sufficient to provide Thirsty Camel with "fair notice" of its claim that he "transmitted, divulged and published [the Event] . . . to patrons within [his establishment]" in violation of the FCA. *Id.* at ¶ 12.

C.      *Damages*

"A defendant's default concedes the truth of the [Complaint's] allegations . . . concerning [his] liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002)). Ordinarily, a Court must hold a hearing to establish damages. *See United Artists Corp.*, 605 F.2d at 857. But this is not always the case. If pleadings, affidavits, and supporting documents allow a Court to determine damages by mathematical calculation, a hearing is unnecessary. *Id; James*, 6 F.3d at 370.

Here, Joe Hand alleges Thirsty Camel violated section 605 of the FCA, which allows

aggrieved parties to choose between receiving statutory and actual damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages call for an award between $1,000 to $10,000, per violation, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If a Court finds a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000, at its discretion. *Id.* § 605(e)(3)(C)(ii). In any event, an aggrieved party who prevails receives full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

 1. Statutory Damages

 Joe Hand maintains that "it would be impossible to determine the full extent of the profits" it lost and "the additional damages sustained . . . as a result of [Thirsty Camel's] unlawful actions." Doc. 10, Mot. for Default J. ¶ 7. For that reason, it requests statutory, rather than actual, damages, asking for $10,000—the statutory maximum—against Thirsty Camel.[1] *Id.* ¶ 11. Joe Hand argues it is entitled to the maximum because, as a result of Thirsty Camel's actions, it lost revenue, was denied the "'value, benefits and profits [it would have] derived from the unauthorized broadcast of the Event[,]" and lost out on "the value of [th]e 'business investment, business opportunities and goodwill'" it might have otherwise enjoyed. *Id.* at ¶ 8 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).

 To support these assertions, Joe Hand presents an affidavit from Thomas P. Riley, whose firm was charged with "the discovery, investigation and prosecution of claims arising from the theft or

---

[1] The Court notes that Joe Hand cannot recover under both sections 553 and 605, even if it can demonstrate Thirsty Camel violated both. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. Therefore, the damages inquiry will focus only on section 605, which allows Joe Hand a greater recovery. *Id.*

piracy of . . . [the Event]." Doc. 10, Pl.'s Ex. A, Riley Aff., App. ¶ 3, App. 5. Riley insists Thirsty Camel's actions threaten Joe Hand's existing and ongoing viability. *Id.* at 12–15. He explains that, "[if] such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast, legitimate commercial establishments will find no reason to purchase the right to legally broadcast this type of programming." *Id.* at ¶ 15. This causes establishments that lawfully broadcast programs to lose business and patrons. *Id.* at ¶ 12. In sum, Thirsty Camel's actions damaged the goodwill and reputation of Joe Hand, and impaired both its right and ability to control and receive fees for transmitting its programs. *Id.* at ¶ 14

Courts have assessed different amounts of statutory damages when presented with violations similar to Thirsty Camel's. *See Joe Hand Promotions, Inc. v. Alima*, No. 13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) ($10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ($5,000). Here, considering the need to deter future FCA violations, and the fact that Thirsty Camel would have faced a sublicensing fee of approximately $1,100 had it actually paid to lawfully broadcast the Event, the Court determines that $5,000 in statutory damages is reasonable. Doc. 10, Pl.'s Ex. A, Riley Aff., App. ¶ 7, App. 6; *see* Doc. 10-1, Ex. A-2, Aff. of Jared Morland (Morland Aff.), App. 30 (capacity of the establishment is approximately one hundred people); Doc. 10-1, Ex. A-3, Rate Card, App. 33 (rate for establishment with 51–100 capacity is $1,100); *see, e.g., Al-Waha Enters.*, 219 F. Supp.

2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA].''). Accordingly, the Court **GRANTS** Joe Hand's request for statutory damages and awards it $5,000.

    2.    <u>Additional Damages</u>

    Joe Hand requests an additional $50,000 in damages under to 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "[Thirsty Camel's] actions were willful and "'for purposes of direct or indirect commercial advantage or private financial gain.'" Doc. 10, Mot. for Default J. ¶ 12 (citations omitted). Joe Hand presents no evidence demonstrating Thirsty Camel willfully violated the FCA, but insists he could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. *Id.* at ¶ 13. Courts have generally found this reasoning persuasive, as there are limited means by which defendants can access closed-circuit, pay-per-view events, and because it would be unlikely for an establishment to intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that Joe Hand's evidence and allegations are sufficient to support a finding of

willfulness.

Further, the record indicates that Thirsty Camel exhibited the Event for either direct or indirect commercial gain, as there were eighteen to forty individuals in the establishment the evening in question. Doc. 10-1, Ex. A-2, Morland Aff., App. 31. While nothing indicates Thirsty Camel's establishment charged these patrons a cover for admission, it did sell them food and beverages. *Id.* at 30; Doc., 10, Mot. for Default J. ¶ 6. This has been enough for other courts to find a commercial motive. *See Beck*, 2013 WL 5592333, at *2 (finding commercial motive based on the fact that "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity"). It is enough for this Court, as well; there is sufficient evidence to establish Thirsty Camel had a commercial motive.

Having found willfulness and commercial motive, the Court moves to the statute's language. The FCA allows "the court, in its discretion," to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii). This leeway has led courts to different approaches and results. *See, e.g., Alima*, 2014 WL 1632158, at *5 (awarding four times the statutory base award as additional damages where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding five times the statutory base award where the defendant broadcast the event in an urban area and the Court noted the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat

offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding three times the base for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Joe Hand provided evidence of an auditing visit, where investigator Jared Morland observed Thirsty Camel violating the FCA. Doc. 10-1, Ex. A-2, Morland Aff. App. 30–31. Though the affidavit notes that Thirsty Camel's establishment was equipped with two televisions, one was not operating the evening of Morland's visit. *Id.* at 30. Either way, there were only between eighteen and forty patrons in attendance during Morland's visit, and nothing indicates Thirsty Camel charged them, or the investigator, a cover, or that he advertised his establishment as broadcasting the Event in order to attract a greater audience. *Id.*

Based on the damages awarded by other courts, the evidence currently before this Court—(which reveals between eighteen and twenty patrons present at Thirsty Camel's establishment—and the need to deter future violations, the Court finds that an additional damages award of $2,000 is reasonable. Thus, the Court **GRANTS** Joe Hand's request for additional damages and awards it $2,000.

3.    Attorney's Fees and Costs

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Here, that is Joe Hand, who seeks a one-third contingent fee or, alternatively, $1,000 worth of attorney's fees. Doc. 10, Mot. for Default J. ¶ 19 n.7; Doc. 10-1, Ex. B, Aff. of David M. Diaz (Diaz Aff.), ¶¶ 5–8, App. 36–39. To

support its request, it presents an affidavit from its counsel, David M. Diaz, who estimates his fee at

$1,000, based on approximately four hours of work a rate of $250 per hour. *Id.* at ¶ 8. Given this

estimate, as well as the evidence and circumstances of the case, the Court finds Joe Hand's request

for $1,000 in attorney's fees to be more reasonable than a one-third contingent fee.

      The Fifth Circuit has described the procedure and standard for determining attorney's fees

as follows:

> The determination of a fees award is a two-step process. First the
> court calculates the "lodestar" which is equal to the number of hours
> reasonably expended multiplied by the prevailing hourly rate in the
> community for similar work. The court should exclude all time that
> is excessive, duplicative, or inadequately documented. Once the
> lodestar amount is calculated, the court can adjust it based on the
> twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*,
> 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d

372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation;

(2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services

properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or

contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the

result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the

case; (11) nature and length of the professional relationship with the client; and (12) awards in

similar cases. 488 F.2d at 717–19.

      Although Joe Hand has not offered invoices or other evidence proving Diaz worked the

number of hours he claimed he did on this case, the Court accepts his estimate of his time and rates

as reasonable, given his experience with anti-piracy cases and the authorities he provides. Doc. 10-1,

Ex. B, Diaz Aff., App. 34–41; *id.*, Ex. B-1, David Diaz Resume, App. 43; *id.* at 44–46 (explanation of Martindale-Hubell Rating System); *id.*, Ex. B-2, Texas Lawyer's Annual Salary & Billing Report, App. 47–55. Accordingly, the Court makes no adjustment to these figures and **GRANTS** Joe Hand's request for $1,000 in attorney's fees.[2]

Though Joe Hand is entitled to recover costs under the statute, as well, it has not requested a specific amount, nor has it put forth any evidence on the issue. As a result, the Court is unable to determine how much to award, or even how to go about calculating that figure. For that reason, it **DENIES** Joe Hand's request for costs at this time, though Joe Hand may provide supplementary briefing and evidence establishing the amount of costs it seeks at a later time.

4.    Permanent Injunction

Lastly, Joe Hand requests a permanent injunction against Thirsty Camel to prevent it "from ever intercepting or exhibiting an unauthorized program in violation of the [FCA]." Doc. 10, Mot. for Default J. 10. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). But Joe Hand provides no support for its request, and the Court finds an injunction is unnecessary to the extent it is merely intended to prevent Thirsty Camel from violating the FCA. The Court therefore **DENIES** Joe Hand's request for a permanent injunction.

_____

[2] In its proposed order, Joe Hand also includes several conditional grants of attorney's fees for potential post-judgment and appellate work. Doc. 10-2, Proposed Order 2. Although Joe Hand does not expound upon this request in its Motion, the affidavit of its counsel, David Diaz, lists various requests for fees that are contingent upon the occurrence of post-judgment events. Doc. 10-1, Ex. B, Diaz. Aff., App. 41. For example, Joe Hand seeks a conditional award of $10,000 to be granted should Thirsty Camel file a "post-judgment, pre-appeal motion," such as a motion to vacate. *Id.* Because this Court has granted reasonable attorney's fees for the work actually performed, and because Joe Hand has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court denies this request.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Joe Hand's Motion for Default Judgment (Doc. 10). In particular, the Court:

- **GRANTS** Joe Hand's request for statutory damages in the amount of $5,000 and for additional damages in the amount of $2,000, for a total award of $7,000;

- **GRANTS** Joe Hand's request for attorney's fees in the amount of $1,000;

- **DENIES** Joe Hand's request for costs of court, pending supplemental briefing;

- **GRANTS** Joe Hand's request for post-judgment interest at the rate of 0.23% on all amounts awarded herein; and

- **DENIES** Joe Hand's request for a permanent injunction.

If Joe Hand is able to provide supplementary briefing and evidence to support its request for court costs, it is **ORDERED** to do so by **October 19, 2015.**

SO ORDERED.

SIGNED: October 8, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE